# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRENT RENARD CHRISTIAN,           )
                                  )
            Petitioner,           )
                                  )
      v.                          )          1:12CR204-1
                                  )          1:14CV284
UNITED STATES OF AMERICA,         )
                                  )
            Respondent.           )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 41).[1]  For the reasons that follow, the Court should deny the instant Section 2255 Motion.

## I.  BACKGROUND

This Court (per Senior United States District Judge N. Carlton Tilley, Jr.) entered an Amended Judgment (correcting a clerical error in the original Judgment (Docket Entry 31)) sentencing Petitioner, inter alia, to a period of imprisonment, after he pleaded guilty to possessing with intent to distribute 133.8 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A) and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  (Docket Entry 36; see

---

[1] Parenthetical citations refer to Petitioner's criminal case.

also Docket Entry 1 (Indictment); Docket Entry 20 (Plea Agt.); Docket Entry 29 (Plea Hrg. Tr.); Docket Entry 30 (Sent'g Hrg. Tr.).) Petitioner's guilty plea reserved his right to appeal the Court's earlier denial of his motion seeking to suppress evidence seized via search warrant. (See Docket Entry 20, ¶ 5.e.; see also Docket Entry 14 (Mot. to Suppress); Docket Entry 28 (Suppression Hrg. Tr.); Docket Entries dated July 12, 2012 (documenting denial of suppression motion).) Petitioner did appeal (Docket Entry 32), but the United States Court of Appeals for the Fourth Circuit affirmed, United States v. Christian, 544 F. App'x 188 (4th Cir. 2013).[2] Petitioner then timely filed his instant Section 2255 Motion (Docket Entry 41), along with a brief (Docket Entry 42) and exhibits (Docket Entry 43). The United States responded (Docket Entry 48) and Petitioner replied (Docket Entry 52).

## II. DISCUSSION

Petitioner's Section 2255 Motion asserts these three inter-dependent claims:

---

[2] On appeal, Petitioner "contend[ed] that the warrant lacked probable cause as there was insufficient evidence connecting an apartment at 2122-H Chester Ridge Drive with criminal activity." Christian, 544 F. App'x at 189. The Fourth Circuit, however, "conclude[d] that the corroborated informant information, in conjunction with [Petitioner's] drug activity and the detective's knowledge of drug trafficking protocol, was sufficient to support probable cause for the warrant." Id. at 190; see also id. ("[T]he district court determined correctly that probable cause supported the warrant."). Petitioner also raised a sentencing-related argument that the Fourth Circuit rejected. See id. at 190-91.

1) "[i]n violation of his Sixth Amendment rights Petitioner received Ineffective Assistance of Counsel (IAC) from his lawyer relative to suppression of the items/evidence seized as a result of the search warrant(s) that were issued in this case" (Docket Entry 41, ¶ 12(Ground One));

2) "Petitioner's Fourth Amendment right to be free from unreasonable search and seizure was violated when the ineffectiveness of his trial counsel during suppression proceedings resulted in [this] Court determining that the applications for search warrants were adequate" (id., ¶ 12(Ground Two); see also id. ("Appellate lawyer, was confined to arguing only what Petitioner's ineffective trial lawyer put on the record.")); and

3) "Petitioner's Fifth Amendment right to 'due process' [A fair hearing] was violated when, after trial counsel failed to have the evidence suppressed, Petitioner felt compelled to enter a plea of guilty" (id., ¶ 12(Ground Three) (internal brackets and bracketed material in original)).

As acknowledged by Petitioner, "the grounds for relief contained [in his Section 2255 Motion] . . . are all rooted in IAC . . . ." (Id., ¶ 13; see also Docket Entry 42 at 2 ("Each of Petitioner's claims contained [in his Section 2255 Motion] are rooted in allegations of ineffective assistance of counsel

. . . .").)[3]   Petitioner indisputably possessed a federal constitutional right to effective assistance of counsel in his criminal case in this Court. See U.S. Const. amend. VI; McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  To establish an IAC claim, Petitioner must show that his trial-level counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted.  See Strickland v. Washington, 466 U.S. 668, 687–94 (1984).  "Surmounting Strickland's high bar is never an easy task. . . .  [T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also United States v. Galloway, 749 F.3d 238, 241 (4th Cir. 2014) ("To meet th[e prejudice] element of an ineffective assistance claim, [the defendant] would have to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable." (internal quotation marks omitted)).

According to Petitioner, "[t]he entire case against [him] rested on the items/evidence seized by police agents during the execution of search warrants on November 18, 2011, particularly the

---

[3] Pin citations to Petitioner's brief refer to said document's internal pagination, which assigns Arabic numerals to the body of the document, preceded by an unnumbered title page and six Roman-numeraled pages setting out tables of contents and of authorities.

items/evidence seized during the search of [an] apartment at 2122-H Chester Ridge Drive, High Point, North Carolina." (Docket Entry 42 at 4; see also Docket Entry 52 at 1 ("Petitioner agrees with the Government that the events involving the Chester Ridge Drive location are the linch-pin of the entire case brought against him; therefore Petitioner confines his arguments below to the warrant application for Chester Ridge.").) Petitioner further has conceded that his trial-level counsel "sought suppression of the items/ evidence seized . . . [by] argu[ing] that the application for a search warrant for [the] Chester Ridge apartment lacked sufficient indicia of 'probable cause', and, therefore, the [m]agistrate to whom the application was made should not have issued the search warrant." (Docket Entry 42 at 4.) Nonetheless, the instant Section 2255 Motion seeks collateral relief based on the contention that said counsel's "suppression efforts were so inadequate that they constituted ineffective assistance of counsel (IAC)." (Id.)

In support of that contention, Petitioner's brief identifies these six matters his counsel allegedly should have raised in challenging the search warrant for 2122-H Chester Ridge Drive:

1) "a report dated 12/23/2011 written by Detective Garo Nordstrom, High Point Police Department . . . undermines the linchpin of the Government's allegation [in the search warrant application] that Petitioner frequently or regularly stayed at 2122-H Chester Ridge Drive" (id. at 9);

5

2) "the [confidential source's] identification of Petitioner when offered only one photograph was not fair" (id. at 12);

3) "[t]he [search warrant application] makes no mention of the basis for the [confidential source's] assertion that Petitioner was selling cocaine at 1109 Wilson Place" (id.; see also id. at 18-19 ("[I]n its Opposition [to the suppression motion filed by Petitioner's counsel,] the Government wrote, 'The [confidential source] stated that within five days prior to the search warrant being issued, [he/she] observed [Petitioner] selling cocaine from inside the residence of 1109 Wilson Place.' That is an improper manipulation of what is contained in the [search warrant application] . . . ." (internal emphasis and citation omitted));

4) the search warrant application's references to the dates when the confidential source gave information are "contradictory, inconsistent, and simply make[] no sense" (id. at 13; see also id. at 14 (asserting that application's chronology indicates "police had other unnamed, unidentified basis for suspecting that [Petitioner] was selling drugs at 1109 Wilson Place"));

5) "[t]he Government mischaracterize[d] the cases it cited [in response to Petitioner's suppression motion]" (id. at 16); and

6) the search warrant application "alleges that the police had contact with the [confidential source] that ranged from May through November of 2011, but over the course of those many months the police never used the [confidential source's] experience in making

6

a controlled buy" (id. at 17; see also id. ("And if not a 'controlled buy' why not a recorded conversation with Petitioner, either face-to-face or via telephone?").[4]

Petitioner's claims (all of which depend on his IAC allegations) fail because he has not made the required showings on either the performance or the prejudice prongs of Strickland.

A.    Performance

As Petitioner's trial-level counsel accurately summarized:

> The substance of Petitioner's contention is that [his trial-level counsel] failed to make [the six above-described] arguments in support of the Motion to Suppress that was filed on Petitioner's behalf in his original prosecution, and that, had [his trial-level counsel] made such arguments, Petitioner would have been successful in suppressing the evidence seized from the execution of a search warrant of a residence located at 2122-H Chester Ridge Drive, High Point, North Carolina.

(Docket Entry 48-1 at 1.)  "This reasoning leaves no room for trial attorney discretion.  The argument misses the Supreme Court's command in Strickland: 'A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

---

[4] Petitioner's brief also sets out some alleged deficiencies in the search warrant applications for other locations (see Docket Entry 42 at 19-24), but (as noted above) Petitioner subsequently acknowledged that "the events involving the Chester Ridge Drive location are the linch-pin of the entire case brought against him" (Docket Entry 52 at 1).  Accordingly, like Petitioner's Reply, this Memorandum Opinion "confines [the discussion] below to the warrant application for Chester Ridge."  (Id.)

perspective at the time.'" United States v. Ayers, No. 1:11CR63, 1:14CV80, 2014 WL 6879261, at *10 (S.D. Ohio Dec. 4, 2014) (unpublished) (quoting Strickland, 466 U.S. at 689), recommendation adopted, 2015 WL 859498 (S.D. Ohio Feb. 27, 2015) (unpublished), appeal filed, No. 15-3362 (6th Cir. Apr. 6, 2015).

Here, Petitioner's trial-level counsel moved to suppress the evidence seized from 2122-H Chester Ridge Drive on the ground that "the search warrant [application] fail[ed] to establish a sufficient nexus between [that apartment] . . . and the allegations regarding [Petitioner's] involvement in drug activity." (Docket Entry 14 at 2.) The memorandum filed by Petitioner's trial-level counsel in support of that motion detailed relevant case law, thoroughly analyzed the search warrant application, and presented reasoned argument as to why that application satisfied neither the nexus element of the probable cause test nor the good-faith exception. (See Docket Entry 15 at 3-15.) At the suppression motion hearing, Petitioner's trial-level counsel argued ably though ultimately unsuccessfully (see Docket Entry 28 at 23-33), as evidenced by the Court's concluding comment that he provided "good representation, good argument . . . [and did] a good job, [but that the Court] just d[id]n't see it the same way as [Petitioner's trial-level counsel] d[id]." (Id. at 33.) Under these

8

circumstances, Petitioner cannot satisfy the deficient performance element of the <u>Strickland</u> standard.[5]

B.   Prejudice

Alternatively, "even if [Petitioner's trial-level counsel] had followed, verbatim, [Petitioner's current] instructions on what to present in a motion to suppress, the result would have been the same because there was no Fourth Amendment violation . . . and this thoroughly litigated issue was correctly resolved [before this Court and] on appeal." <u>O'Neill v. United States</u>, No. 04CV461, 2007 WL 2042250, at *4 (E.D. Wis. July 11, 2007) (unpublished) (emphasis omitted); <u>see also</u> <u>Christian</u>, 544 F. App'x at 190 ("conclud[ing] that the corroborated informant information, in conjunction with [Petitioner's] drug activity and the detective's knowledge of drug trafficking protocol, was sufficient to support probable cause for the warrant" and that this Court "determined correctly that probable cause supported the warrant"). In other words, Petitioner cannot show prejudice as required by <u>Strickland</u>, because the six

---

[5] "[T]he Court['s] rul[ing] against [P]etitioner on this issue does not prove that [his trial-level] counsel was ineffective." <u>Banks v. United States</u>, Nos. 5:08CV162, 5:05CR30, 2010 WL 3855065, at *21 (N.D.W. Va. July 21, 2010) (unpublished), <u>recommendation adopted</u>, 2010 WL 3854426 (N.D.W. Va. Sept. 29, 2010), <u>appeal dismissed</u>, 439 F. App'x 234 (4th Cir. 2011); <u>see also</u> <u>United States v. Pearson</u>, No. Crim. No. 04-433, Civil Action No. 07-904, 2007 WL 2493882, at *3 (E.D. Pa. Aug. 30, 2007) (unpublished) ("[The defendant's] counsel filed and litigated the suppression motion. Just because the motion was denied does not mean that counsel's performance was wanting.").

above-referenced arguments he has proposed would not have warranted suppression. See Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel was not constitutionally ineffective in failing to [pursue an argument when] . . . it would have been futile for counsel to have done so . . . .").

> i. Detective Nordstrom's Report

First, Petitioner has asserted that, in moving for suppression, his trial-level counsel should have contended that a report by Detective Nordstrom "undermine[d] the linchpin of the Government's allegation [in the search warrant application] that Petitioner frequently or regularly stayed at 2122-H Chester Ridge Drive." (Docket Entry 42 at 9; see also id. at 11 ("If not a 'deliberate falsehood' certainly those aversions [sic] were made in the [search warrant application] with 'reckless disregard for the truth.'").)[6] A careful review of the search warrant application and Detective Nordstrom's report defeats this assertion.

In relevant part, the search warrant application states that:

1) "[w]ithin the last (5) five days of this search warrant application [signed on November 18, 2011], the applicant received

---

[6] "[A] warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause . . . . Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." Franks v. Delaware, 438 U.S. 154, 165 (1978) (internal citations omitted).

information from a confidential reliable source that a black male known to him/her as 'Brent Christian' was in the business of selling Cocaine from inside a residence located at 1109 Wilson Place, High Point, North Carolina" (Docket Entry 43, Ex. A at 3; see also id. ("The confidential source stated that within the past (5) five days he/she observed Cocaine being sold by 'Brent' from inside the residence of 1109 Wilson Place . . . ."); id., Ex. A at 4 (establishing reliability of confidential source by reciting that he/she "has made at least (1) one 'controlled buy' of controlled substances under the direct supervision of members of the High Point Police Departments [sic] Vice/Narcotics Unit" and that he/she "has also provided the applicant with names of persons and places that are involved in the use and distribution of Cocaine . . . [which] information has led to the seizure of Cocaine and United States currency as well as the arrest of those involved"));

2) "[t]he confidential source also advised that Brent Christian does not live at 1109 Wilson Place . . . but he uses the residence as a place of manufacturing and distribution of Cocaine" (id., Ex. A at 3);

3) "[t]he confidential source advised that Brent Christian sometimes stays at an apartment located inside the Eastchester Ridge Apartment complex in High Point" (id.);

4) "[t]he applicant was able to conduct research and surveillance and identify 2122-H Chester Ridge Drive, High Point,

11

North Carolina as the apartment that Brent Christian frequents and stays overnight at on a regular basis" (id.);

5) "[o]n 11-17-2011 Detective Nordstrom advised that he witnessed Brent Christian opening, closing and standing in the doorway of 2122-H Chester Ridge Drive" (id.; see also id. ("Detective Nordstrom advised that when he observed Brent Christian in the doorway he appeared to have just woken up."));

6) "[t]he applicant has conducted surveillance on [Petitioner] and observed him travel by vehicle from 2122-H Chester Ridge Drive . . . to 1109 Wilson Place . . . as well as from 1109 Wilson Place . . . to 2122-H Chester Ridge Drive . . . on numerous occasions with the last such occurance [sic] being within the past 48 hours of this search warrant application" (id., Ex. A at 4); and

7) "[b]ased upon training and experience in other investigations; this applicant has found it to be common by persons dealing in controlled substances to . . . store the bulk of their controlled substances at their residence and/or business which these persons use as a 'stash house'" (id.; see also id., Ex. A at 5-6 (describing applicant's training and experience)).

Detective Nordstrom's report, in turn, pertinently declares:

[The search warrant applicant] requested that [Detective Nordstrom] go to 2122-H Chester Ridge Drive High Point, in an attempt to place Brent CHRISTIAN at this particular apartment. [The search warrant applicant] had knowledge Brent CHRISTIAN was residing at that building and apartment but not enough certainty to apply for a search warrant or other related process. Prior to this

> operation [Detective Nordstrom] viewed the most recent
> High Point Police Department Pistol 2000 photograph of
> Brent CHRISTIAN.
>
> On 11/17/2011 at approximately 1100 hours [Detective
> Nordstrom] drove to 2122-H Chester Ridge Drive and walked
> upstairs to apartment H. . . . [Detective Nordstrom]
> knocked on the door at apartment H and waited for
> approximately 15 seconds when the door opened. Brent
> CHRISTIAN opened the door . . . . [Detective Nordstrom]
> telephoned [the search warrant applicant] of [Detective
> Nordstrom's] findings . . . .

(Id., Ex. B at 1.)[7]

In Petitioner's view, "[i]f the police only knew with certainty that [he] stayed at 2122-H on the night of 11/16/2011, then it was with reckless disregard for the truth that [the applicant] averred in the [search warrant application] that Petitioner frequents and stays overnight at 2122-H on a regular basis and on numerous occasions." (Docket Entry 42 at 10 (internal brackets and quotation marks omitted); see also id. ("The door to 2122-H is in plain view from the parking lot of the Eastchester Apartment Complex. If police surveilled Petitioner frequently and regularly staying at the Eastchester Apartment Complex they would have to know with certainty which apartment he was staying in.").) That approach ignores the United States Supreme Court's following command:

> [A]ffidavits for search warrants, such as the one
> involved here, must be tested and interpreted by

---

[7] Detective Nordstrom assumed the guise of an evangelist to conceal the purpose of his visit. (Docket Entry 43, Ex. B at 1.)

13

> magistrates and courts in a commonsense and realistic
> fashion. They are normally drafted by nonlawyers in the
> midst and haste of a criminal investigation. Technical
> requirements of elaborate specificity once exacted under
> common law pleadings have no proper place in this area.
> A grudging or negative attitude by reviewing courts
> toward warrants will tend to discourage police officers
> from submitting their evidence to a judicial officer
> before acting.

United States v. Ventresca, 380 U.S. 102, 108 (1965); see also id.

at 109 (cautioning that "courts should not invalidate [a] warrant

by interpreting the affidavit [offered to procure it] in a

hypertechnical, rather than a commonsense, manner").

Read reasonably (i.e., "in a common sense and realistic

fashion," id. at 108), no conflict exists between the search

warrant application for 2122-H Chester Ridge Drive and Detective

Nordstrom's report. As quoted above, the statements in the search

warrant application reflect that (1) the applicant received

information from a reliable source that Petitioner "sometimes

stay[ed]" at an apartment in a particular complex (Docket Entry 43,

Ex. A at 3), (2) the applicant thereafter conducted surveillance of

Petitioner which corroborated that information and identified the

specific apartment (id., Ex. A at 3-4), and (3) the applicant (with

assistance from Detective Nordstrom) then definitively confirmed

Petitioner's connection to that apartment (id. at 3). Consistent

with that account, Detective Nordstrom's report (again, as quoted

above) documents that (1) the search warrant applicant "had

knowledge [Petitioner] was residing at that building and apartment"

(id., Ex. B at 1 (emphasis added)), but believed he needed additional evidence connecting Petitioner to the apartment in question before he applied for a search warrant (id.), and (2) Detective Nordstrom obtained such evidence by going to the specific apartment identified by the search warrant applicant and encountering Petitioner (id.), which encounter Detective Nordstrom then described to the search warrant applicant (id.).

Petitioner's perception of a material conflict between the search warrant application and Detective Nordstrom's report regarding the degree of certainty expressed by the search warrant applicant as to the surveillance-based identification of the apartment occupied by Petitioner ignores the fact that, after receiving confirmation of Petitioner's presence at that apartment from Detective Nordstrom, the search warrant applicant understandably ascribed more certainty to his identification of 2122-H Chester Ridge Drive via surveillance than he did when he requested such confirmation. One seeks corroboration not merely for the independent value of any new evidence, but also because corroborative evidence increases the level of confidence one places in previously-gathered evidence. See generally United States v. Figeroa, Crim. No. 08-745-1, 2010 WL 1047725, at *4 (E.D. Pa. Mar. 19, 2010) (unpublished) ("In the instant matter, the police received information regarding the alleged activities of [the defendant] through a tip from a confidential informant . . . [the

15

police] reasonably believed to be reliable, knowledgeable, and honest. . . . The confidence that [the police] had in the informant's tip was then bolstered by substantial corroborating evidence [the police gathered].").

Simply put, Petitioner's instant argument contravenes Ventresca's directive against "grudging" and "hypertechnical" review of search warrant applications and falls far short of establishing any reckless disregard for the truth by the search warrant applicant in this case. As a result, Petitioner cannot meet his burden of proving that he suffered prejudice when his trial-level counsel opted against utilizing Detective Nordstrom's report in litigating Petitioner's suppression motion.

### ii. Photographic Identification

Petitioner next has complained that his trial-level counsel should have argued "that the [confidential source's] identification of Petitioner when offered only one photograph was not fair." (Docket Entry 42 at 12; see also Docket Entry 43, Ex. A at 3 ("The applicant also showed the confidential source a single color photograph . . . of [Petitioner] to which the reliable source replied that the person in the photograph was who he/she knows at [sic] 'Brent Christian'.").) "[A]n identification made after viewing a single photograph is not per se too unreliable to establish probable cause or even to be received in evidence at trial; rather, 'reliability is the linchpin.'" Hanniford v. City

16

of N.Y., No. 12CV40(PKC)(SMG), 2014 WL 7801320, at *5 (E.D.N.Y. Dec. 23, 2014) (unpublished) (quoting Manson v. Brathwaite, 432 U.S. 98, 113-14 (1977)), recommendation adopted, 2015 WL 588766 (E.D.N.Y. Feb. 11, 2015) (unpublished); see also Quinn v. Robinson, 783 F.2d 776, 815 (9th Cir. 1986) ("[T]here is no per se rule that specifies which identification procedures are competent for probable cause purposes." (internal quotation marks omitted)). Moreover, "prior familiarity with a suspect may render an otherwise suggestive identification sufficiently reliable . . . ." Hanniford, 2014 WL 7801320, at *6.

In this case, the search warrant application reflects the existence of such familiarity in that the confidential source knew Petitioner's name, as well as detailed information about his family. (Docket Entry 43, Ex. A at 3.) Given that context, Petitioner cannot show prejudice, because "challenging the circumstances of [the] identification [would have been] meaningless where the [confidential source] knew [Petitioner] prior to the incident and identified him to the police by name." Robichaw v. Mechling, No. 03CV4116, 2005 WL 331496, at *10 (E.D. Pa. Feb. 10, 2005) (unpublished), recommendation adopted, 2008 WL 311009 (E.D. Pa. Feb. 1, 2008) (unpublished).

iii. Basis for Confidential Source's Knowledge

The search warrant application states that, "[w]ithin the last (5) five days of this search warrant application [signed on

17

November 18, 2011], the applicant received information from a confidential reliable source that a black male known to him/her as 'Brent Christian' was in the business of selling Cocaine from inside a residence located at 1109 Wilson Place, High Point, North Carolina." (Docket Entry 43, Ex. A at 3.)  Petitioner has alleged that his trial-level counsel should have taken the position that the foregoing statement provided no support for a finding of probable cause to believe Petitioner, in fact, operated a drug business, because the application "makes no mention of the basis for the [confidential source's] assertion that Petitioner was selling cocaine at 1109 Wilson Place."  (Docket Entry 42 at 12.) This allegation cannot establish the prejudice necessary for an IAC claim because, elsewhere in the search warrant application, the applicant expressly averred that "[t]he confidential source stated that within the past (5) five days he/she <u>observed</u> Cocaine being sold by 'Brent' from inside the residence of 1109 Wilson Place . . . ."  (Docket Entry 43, Ex. A at 2 (emphasis added).)[8]

---

[8] To the extent Petitioner has argued that the above-quoted statement by the confidential source (that he/she "observed" Petitioner selling cocaine at 1109 Wilson Place) dates to May 2011, rather than to November 2011 (<u>see</u> Docket Entry 42 at 14-15), that contention fails in light of the Fourth Circuit's explicit, contrary interpretation of the search warrant application, <u>see</u> <u>Christian</u>, 544 F. App'x at 190 ("[T]he application provided an undisputedly reliable confidential tip that [Petitioner] had sold cocaine within the five days prior to the warrant application at Wilson Place.").  Further, the Fourth Circuit's conclusion on this point moots Petitioner's assertion that any report from May 2011 (continued...)

iv.  Chronology Confusion

Petitioner correctly has observed that the search warrant application contains references to communications between law enforcement officers and the confidential source about Petitioner both in May and November 2011.  (Docket Entry 42 at 13 (discussing Docket Entry 43, Ex. A at 3).)  Although the search warrant applicant could have better organized the chronology of events (as he did in connection with another search warrant application (see Docket Entry 43, Ex. B at 3)), Petitioner has not shown that a reasonable reader necessarily would have to adopt his view of the instant application as so "contradictory [and] inconsistent [that it] makes no sense" (Docket Entry 42 at 13; see also id. at 14 ("The unavoidable conclusion [from the order of events described in the search warrant application] must be that the police had other unnamed, unidentified basis [sic] for suspecting that 'Brent' was selling drugs at 1109 Wilson Place.")); to the contrary, as Petitioner's trial-level counsel has indicated, Petitioner's position requires an assumption that law enforcement officers "could not have received information from the confidential source within 5 days of the search warrant [application in November 2011] and also received additional information from [him/her] during the

_____

[8](...continued)
about his sale of drugs failed to support the warrant due to staleness (see Docket Entry 42 at 14-15).

month of May [2011]. Petitioner's argument is based on semantics and a hyper-technical reading of the [application], which . . . does not result in a common sense understanding of the document." (Docket Entry 48-1 at 3.) As the discussion in Part II.B.i. details, Supreme Court precedent requires this Court to reject hyper-technical readings of search warrant applications. The decision of Petitioner's trial-level counsel to refrain from pursuing a challenge of that sort thus caused Petitioner no prejudice.

### v. Case Law Cited by the United States

In the memorandum filed in support of Petitioner's suppression motion, his trial-level counsel noted that the search warrant application "includes the statement that [Petitioner] had been arrested for 'possession with intent to sell/deliver cocaine and maintaining a dwelling for the sale of controlled substances on November 10, 2005,' [but] fails to disclose that those charges were dismissed . . . ." (Docket Entry 15 at 6-7.) The United States responded to that point as follows:

> [A] target's prior criminal activity or record is clearly relevant to determining probable cause for the issuance of a search warrant. United States v. Bynum, 293 F.3d 192, 197-98 (4th Cir. 2002) (citing with approval United States v. Taylor, 985 F.2d 3, 6 (1st Cir.), cert. denied, 508 U.S. 944 (1993), and United States v. Sumpter, 669 F.2d 1215, 1222 (8th Cir. 1982)). As evidenced by several of the cases cited in [Petitioner's] memorandum in support of his motion to suppress, a target's prior arrest history is important in the probable cause calculus. See United States v. Servance, 394 F.3d 222,

20

225 (4th Cir. 2005) (search warrant included information
that defendant had "at least one arrest for drugs" seven
years prior to warrant application); <u>United States v.
Williams</u>, 974 F.2d 480, 480-81 (4th Cir. 1992) (search
warrant included information that defendant had
outstanding warrant for drug offense and seven prior drug
related arrests. <u>Neither Servance nor Williams make
mention of whether the defendants in those cases were
convicted as a result of the prior arrests. Implicit in
those cases is the premise that the fact of a prior drug
arrest, standing alone, is properly for the magistrate's
consideration when determining probable cause.</u>

(Docket Entry 18 at 14-15 (emphasis added).)

Petitioner's brief in support of his instant Section 2255

Motion asserts that in the foregoing discussion:

The Government mischaracterize[d] the cases it
cited. . . . <u>Taylor</u> specifically says "appellant's prior
**convictions**" and <u>Sumpter</u> says "the appellant had
previously been arrested **and convicted** for drug related
activities." . . . [T]he Government accurately quotes
<u>Servance</u> for the language that the defendant had "at
least one arrest for drugs," but the Government failed to
point out that the quote is immediately followed by
**eliptic(s)** [sic]. The eliptic(s) [sic] could well
replace the fact that the defendant had been not only
"arrested" but convicted as well.

(Docket Entry 42 at 17 (emphasis added by Petitioner).) According

to Petitioner, his trial-level counsel performed ineffectively

because, when he replied in support of the suppression motion, he

"ma[de] no reference to the Government's mischaracterizations of

the cases it cite[d] on the issue of 'prior arrests.'" (<u>Id.</u>)

This contention lacks merit because Petitioner has not shown

that the United States engaged in any such mischaracterization. As

the above quotation from the response by the United States to

Petitioner's suppression motion reveals, the United States did not suggest (much less state) that Taylor and Sumpter addressed consideration of arrest records; to the contrary, the United States cited only Servance and Williams for the proposition that "a prior drug arrest, standing alone, is properly for the magistrate's consideration when determining probable cause." (Docket Entry 18 at 14-15.)[9] Further, the relevant portion of Servance contains no "eliptics" (or ellipsis). See Servance, 394 F.3d at 225 ("Police records revealed that Servance's driving license had been suspended by the state and that he had 'at least one arrest for drugs' in 1991.").[10] Accordingly, Petitioner has not established any prejudice associated with his trial-level counsel's reply in support of Petitioner's suppression motion.

     vi.  Lack of Controlled Buy/Recording

Finally, Petitioner apparently would have the Court grant him relief because his trial-level counsel did not challenge the search warrant based on the absence from the application of any reported

---

[9] Abundant additional authority also supports the conclusion that a judicial official may consider arrest records in assessing the existence of probable cause. See, e.g., United States v. Cardoza, 713 F.3d 656, 660 (D.C. Cir. 2013); United States v. Bryant, 181 F. App'x 354, 356 (4th Cir. 2006).

[10] The Supreme Court vacated the judgment in Servance and remanded "for further consideration in light of United States v. Booker, 543 U.S. 220 (2005)." Servance v. United States, 544 U.S. 1047, 1047 (2005) (internal parallel citations omitted). That sentencing-related development does not bear on the issue for which the United States cited the Fourth Circuit's decision.

controlled buys from or recordings of Petitioner. (See Docket
Entry 42 at 17.) The Court should decline that request because a
search warrant application "is judged on the adequacy of what it
does contain, not on what it lacks, or on what a critic might say
should have been added." United States v. Allen, 211 F.3d 970, 975
(6th Cir. 2000); see also United States v. Lebowitz, 647 F. Supp.
2d 1336, 1348 (N.D. Ga. 2009) ("Speculation about what the officer
might have done or should have done to confirm the information in
her affidavit does not establish a [] violation [of Franks v.
Delaware, 438 U.S. 154, 165 (1978)], even if that further
investigation might have negated probable cause."), aff'd, 676 F.3d
1000 (11th Cir. 2012).[11]

### III.  CONCLUSION

Petitioner's allegations do not clear Strickland's high bar,
thus dooming not only his Sixth Amendment claim (Ground One), but
also his remaining, related Fourth Amendment and Fifth Amendment
claims (Grounds Two and Three).

---

[11] Petitioner's rhetorical question, "Could it be that, using
the [confidential source], the police unsuccessfully attempted to
make a controlled buy or record an incriminating conversation?"
(Docket Entry 42 at 17), warrants no relief, because, "to succeed
on his ineffective assistance claims, [Petitioner] is not entitled
to satisfy the prejudice requirement through rank speculation,"
United States v. Basham, 789 F.3d 358, 375 (4th Cir. 2015)
(internal quotation marks omitted); see also United States v.
Nguyen, No. 3:14CR65GNS1, 2015 WL 1003855, at *12 (W.D. Ky. Mar. 6,
2015) (unpublished) ("Mere speculation will not be sufficient to
make the substantial preliminary showing required by Franks.").

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 41) be denied without a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 29, 2015